UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

DAVID DARNELL NELSON, JR.,

                Plaintiff,

v.                                     Case No. 19-cv-510-pp

CAPTAIN GEGARE, *et al.*,

                Defendants.

---

**ORDER DIRECTING PLAINTIFF TO FILE A SECOND AMENDED COMPLAINT AND DENYING WITHOUT PREJUDICE MOTIONS TO APPOINT COUNSEL (DKT. NOS. 24, 32, 34)**

---

The plaintiff is in custody at the Milwaukee Secure Detention Facility, and is representing himself; in November 2018, he filed a complaint under 42 U.S.C. §1983 in the Western District of Wisconsin. Dkt. No. 1. The case is now before this court, having been transferred from the Western District. Dkt. No. 26. The court will require the plaintiff to file a second amended complaint and deny without prejudice his motions to appoint counsel.

**I.     Procedural History and Directing a Second Amended Complaint**

On January 4, 2019, the court in the Western District screened the plaintiff's complaint. Dkt. No. 19. Chief Judge Peterson observed that the plaintiff had filed a complaint and almost a *dozen* supplements raising different claims against different defendants. Id. at 1–2. He explained that when a plaintiff spreads different claims across several documents, the court can't tell the scope of those claims and the defendants can't respond to them. Id. at 2. Judge Peterson gave the plaintiff the opportunity to file a single pleading that

included all his claims against every defendant he wanted to sue, and that named every defendant in the caption of the complaint. Id.

The court in the Western District received the plaintiff's amended complaint on January 22, 2019. Judge Peterson screened the amended complaint, but identified a different problem: the complaint "include[d] unrelated claims against different defendants, which violates the Federal Rules of Civil Procedure." Dkt. No. 21 at 1. He found that the plaintiff had compiled three separate lawsuits into one, all relating to the plaintiff's treatment at the Milwaukee Secure Detention Facility:

(1) <u>Lawsuit One</u>: Allegations that defendant Gegare watched the plaintiff shower and then, when the plaintiff tried to stop it, Gegare and others used excessive force against him. Also allegations that Gegare told the plaintiff to kill himself.

(2) <u>Lawsuit Two</u>: Allegations that various officials took the plaintiff out of protective confinement without providing adequate mental health treatment.

(3) <u>Lawsuit Three</u>: Allegations that Dr. McLain refused to send the plaintiff to the hospital when the plaintiff was vomiting, spitting up blood and suffering from other symptoms related to ulcers.

Id. at 2–3.

Judge Peterson observed that the plaintiff also had alleged that he was reincarcerated due to the actions of the agent who'd supervised him while he was released, Amy Lampone. Id. at 3. He explained that a §1983 lawsuit was not the appropriate way to bring that king of claim, and that if the plaintiff wanted to pursue his claim against Lampone, he needed to file a writ of *habeas corpus* after exhausting his state remedies. Id. (citing <u>Heck v. Humphrey</u>, 512 U.S. 477, 481 (1994)). Judge Peterson instructed the plaintiff to pick which of

2

the three identified lawsuits he wanted to pursue in this case and either file the other two as separate lawsuits (in which case he'd be required to pay a separate filing fee for each and possibly incur a strike if one of them was dismissed for failure to state a claim) or ask the court to dismiss the other two lawsuits (in which case he wouldn't owe additional filing fees or incur any strikes). Id. at 3-4. Judge Peterson explained that once the plaintiff decided which suit he'd like to pursue, Judge Peterson would screen the allegation in that suit. Id. at 4.

The plaintiff responded that he would like to proceed on lawsuit number two (various officials taking him out of protective confinement without providing him adequate mental health treatment). Dkt. No. 23 at 1-2. The plaintiff stated that because all the lawsuits happened in the same year, he wanted to "keep them all but on separate case numbers please." Id. at 2. He also asked that his case be transferred to the Eastern District of Wisconsin. Id. at 1. The court granted the request to transfer venue, and the case was assigned to this court. Dkt. No. 26.

Neither Judge Peterson nor this court have screened the merits of the claim the plaintiff wants to bring against the people who took him out of protective custody. The allegations relating to that claim start on page four of the amended complaint. The complaint says that the plaintiff has mental illness, emotional disorders and a physical condition (ulcers). Dkt. No. 20 at 4. The plaintiff alleges that on July 16, 2018, he was on protective confinement in the restrictive housing unit. Id. He says that this was supposed to be a secure

3

location, but that it wasn't. Id. The plaintiff alleges that on July 16, 2018 Captain Gegare "and his team officials" opened the plaintiff's cell door without him secure, while he was showering (naked). Id. The plaintiff says that he was on the upper tier—5B-cell 18. Id. He asserts that the cell door opened without any official or supervisor around to protect him. Id. The plaintiff states that he came out of the cell and climbed over the tier, hanging naked until Gegare and other correctional officers arrived. Id. The plaintiff says that Gegare and the others failed to protect him, putting him in an "ajar" cell or opening his cell door for him to kill himself. Id. While the court can't be sure, it appears that the plaintiff believes that Gegare and the others did this in retaliation because he'd filed a grievance against the authority that put him in protective confinement in the RSU and failed to protect him on the sixth floor on September 27, 2018. Id. He says that "all the defendants" kept taking him out of protective confinement without treatment. Id.

The plaintiff also says that Warden Malone, Deputy Warden Guillonta, PSU supervisor Abrams, Gegare, Inmate Complaint Examiner Packer and security direct Miller all put him in protective confinement "and or" agreed to protective confinement, and that all of them did not give him treatment before taking him off protective confinement, between December 19, 2018 and December 26, 2018. Id. at 5. At the end of this section of the complaint, the plaintiff adds, "And the Department of Corrections." Id. He says that the defendants violated his rights under the Eighth and Fourteenth Amendments, and that they were deliberately indifferent when they failed to protect him. Id.

4

The court understands that the plaintiff struggles with mental illness. But the court can't tell from this part of the complaint what the plaintiff is alleging that the defendants did wrong. Wis. Admin. Code § 306.05(1) allows a security director to put an inmate in protective confinement if the inmate asks in writing or if the security director is satisfied that protective confinement is necessary for the safety and welfare of the inmate. Section 306.05(2) requires the inmate to stay in protective confinement until the security director determines that the conditions that warranted the confinement no longer exists and approves the inmate's release. An inmate who is in protective confinement is considered to be in "maximum security" as defined in chapter 302 of the administrative code. Wis. Admin. Code §306.05(3). The law doesn't say anything about treatment.

As far as the court can tell, the plaintiff was in and out of protective confinement between July and December 2018. The plaintiff doesn't say why he kept getting placed in protective confinement, although he implies that because of his mental illness issues, he was suicidal. He appears to believe that Gagare knew that he was suicidal. He seems to allege that on July 16, 2018, someone—or more than one person—left his cell door open while he was showering, which allowed the plaintiff to leave his cell, climb over the tier rail and hang there until Gegare and others arrived. That kind of sounds like a failure-to-protect claim under the Eight Amendment.

The plaintiff seems to say that he thinks Gegare and others left his cell door open in retaliation for his filing an inmate grievance. But he seems to

allege that he filed that grievance in September 2018—two months *after* the date on which he says he was able to get out of his cell and climb over the tier rail. The court does not understand how Gegare could retaliate against the plaintiff for a grievance the plaintiff had not yet filed.

Finally, the plaintiff appears to argue that the named defendants—Malone, Guillonta, Abrams, Gegare, Packer and Miller (as well as the Department of Corrections) either put him on protective confinement or agreed that he should be put on confinement, and that all of them either took him out of confinement or agreed to take him out of confinement without first giving him treatment.

The court is going to give the plaintiff one more chance to clarify his claim about protective confinement. The court will allow him to file a second amended complaint, using the court's complaint form. The court is enclosing a copy of its complaint form and instructions. The plaintiff should write the words "SECOND AMENDED" in front of the word "COMPLAINT" at the top of the first page, then put the case number for this case—19-cv-510—in the field for "Case Number." He must list all the defendants involved in the July 2018 to December 2018 protective confinement issue in the caption of the complaint. He must use the spaces on pages two and three to allege the key facts that give rise to the claim he wishes to bring, and to describe what each defendant did in relation to that claim. If the space is not enough, he may use up to five additional sheets of paper (putting page numbers on each additional page). The amended complaint takes the place of the prior complaint, and must be

complete in itself. Plaintiff cannot simply say, "Look at my first complaint for further information." See Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84, 133 F.3d 1054, 1056-57 (7th Cir. 1998).

Specifically, the plaintiff should tell the court why he was in and out of protective confinement between July and December 2018. If it was because he was suicidal, or a risk to himself, he should explain how Gegare and the other defendants knew that, and when they knew it. He should explain why he believes that it was Gegare who left his cell open in July 2018. He should explain what he did that he thinks caused the defendants to retaliate against him, and when he did it. He should explain what kind of "treatment" he believes the defendants should have given him before letting him out of protective confinement. He should explain how the defendants harmed him by either putting him in protective confinement, or by letting him out without treatment. The second amended complaint does not need to be long or contain legal language or citations to statutes or cases, but it does need to provide the court and each defendant with notice of what each defendant allegedly did to violate the plaintiff's rights.

The court also notes that the plaintiff cannot sue the Department of Corrections under §1983. The Department of Corrections is an agency of the State of Wisconsin. "[A] state and its agencies are not suable 'persons' within the meaning of section 1983 . . . ." Thomas v. Illinois, 697 F.3d 612, 613 (7th Cir. 2012) (citing Will v. Mich. Dep't of State Police, 491 U.S. 58, 70-71 (1989)); see also Hamilton v. Miller, No. 18-cv-47, 2018 WL 4215610, at *2 (E.D. Wis.

7

Aug. 31, 2018). The plaintiff should not include the Department of Corrections as a defendant in his second amended complaint.

Finally, the plaintiff indicated to Judge Peterson that he would like to pursue the other two lawsuits Judge Peterson identified in the amended complaint. It doesn't appear that the plaintiff has done this—at least, not in the Eastern District.[1] If the plaintiff still wants to pursue those suits, he will need to file new complaints, along with separate motions to proceed without prepaying the filing fee.

If the plaintiff files the amended complaint in time for the court to receive it by the end of the day on May 15, 2020, the court will screen it under 28 U.S.C. §1915A. The court notes, however, that the plaintiff has filed other documents and letters in support of his claim—a demand for a jury trial that contains factual allegations about the claims in the amended complaint (Dkt. No. 29), a letter containing more factual allegations (Dkt. No. 30), a nine-page document titled "discovery" that contains yet more factual allegations (Dkt. No. 31). This is *exactly* what Judge Peterson told the plaintiff he could not do in the Western District. The rules are no different in this district. The plaintiff must put all his factual allegations about his protective confinement claim into the second amended complaint, and then he must *wait*. He must wait patiently for the court to review those allegations and decide whether he can proceed. The more documents the plaintiff files, the harder it is for the court to figure

---

[1] The plaintiff has two other pending lawsuits in this district, 19-cv-1380 and 19-cv-1387. Neither appears to deal with the other allegations in the amended complaint in this case.

8

out what his claims are and to screen them. Every time the plaintiff files a new document with new allegations, he slows down the process. The court knows it must be hard for the plaintiff, but he's not helping himself by filing more and more documents.

## II. Motions to Appoint Counsel

The plaintiff has filed several motions to appoint counsel Dkt. Nos. 24, 32, 34. In a civil case, the court has discretion to recruit a lawyer for individuals who cannot afford to hire one. Navejar v. Iyola, 718 F.3d 692, 696 (7th Cir. 2013); 28 U.S.C. §1915(e)(1); Ray v. Wexford Health Sources, Inc., 706 F.3d 864, 866-67 (7th Cir. 2013). "[D]eciding whether to recruit counsel 'is a difficult decision: Almost everyone would benefit from having a lawyer, but there are too many indigent litigants and too few lawyers willing and able to volunteer for these cases.'" Henderson v. Ghosh, 755 F.3d 559, 564 (7th Cir. 2014) (quoting Olson v. Morgan, 750 F.3d 708, 711 (7th Cir. 2014)).

In exercising its discretion, the court must consider two things: "(1) 'has the indigent plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so,' and (2) 'given the difficulty of the case, does the plaintiff appear competent to litigate it himself?'" Pennewell v. Parish et al., 923 F.3d 486, 490 (7th Cir. 2019), (quoting Pruitt v. Mote, 503 F.3d 647, 653 (7th Cir. 2007)). To satisfy the first prong, the court must determine that a plaintiff made a good faith effort to hire counsel on his own. Pickett v. Chi. Transit Authority, 930 F.3d 869, 871 (7th Cir. 2019). To do so, the plaintiff must show he contacted at least three lawyers and provide the court with (1)

9

the lawyers' names; (2) their addresses; (3) how and when the plaintiff attempted to contact the lawyer; and (4) the lawyers' responses.

When considering the second prong, the court "must examine the difficulty of litigating specific claims and the plaintiff's individual competence to litigate those claims without counsel." Pennewell, 923 F.3d at 490. The court looks at "whether the difficulty of the case, factually, legally, and practically, exceeds the litigant's capacity as a layperson to coherently litigate the case." Id. This includes "all tasks that normally attend litigation," such as "evidence gathering, preparing and responding to court filings and motions, navigating discovery, and putting on a trial." Id. at 490-491. The court "must consider the plaintiff's literacy, communication skills, education level, litigation experience, intellectual capacity, psychological history, physical limitations and any other characteristics that may limit the plaintiff's ability to litigate the case." Id. at 491. In situations where the plaintiff files his motion in the early stages of the case, the court may determine that it is "impossible to tell whether [the plaintiff] could represent himself adequately." Pickett, 930 F.3d at 871.

The plaintiff has not provided evidence that he tried to find an attorney on his own. The court will deny his motions for that reason alone.

The court also notes the following regarding the plaintiff's ability to represent himself in the early stage of this case. The plaintiff says he suffers from hypothyroidism. Dkt. No. 32 at 1; Dkt. No. 34. The plaintiff says that among other symptoms, hypothyroidism causes trouble concentrating and thinking clearly, memory loss, forgetfulness, depression and confusion. Dkt.

No. 34. The plaintiff says that he is mentally ill and has a learning disorder. Dkt. No. 32 at 1. (The plaintiff also mentions that his lawsuits keep getting dismissed, dkt. no. 34, but this court has not dismissed any of his cases.)

The plaintiff's struggles with mental illness are not unique among prisoner plaintiffs. Neither is his concern that trying to do this on his own will be difficult. He's right; it likely will be difficult. But that does not mean he can't do it. So far, the plaintiff has been able to communicate with the court. He appears to have tried to follow Judge Peterson's directions. He may need an extra chance to get his pleadings right, but many prisoner plaintiffs do. The court has provided detailed instructions on what the plaintiff should do now. It will provide him extra time to do it. And if he finds that needs more than that, he may ask.

If the plaintiff's circumstances change, he may renew his motion. At this early stage, the court denies his motions to appoint counsel without prejudice.

### III. Conclusion

The court **ORDERS** that the plaintiff must file a second amended complaint that complies with the requirements of this order. The plaintiff must file that second amended complaint in time for the court to receive it by the end of the day on **May 15, 2020**. If the court does not receive a second amended complaint by the end of the day on May 15, 2020 (or a request from the plaintiff for an extension of time), the court will dismiss this case for failure to diligently pursue it under Civil Local Rule 41(c).

The court **DENIES** without prejudice the plaintiff's motions to appoint counsel. Dkt. Nos. 24, 32, 34.

The court **ORDERS** that plaintiffs who are inmates at Prisoner E-Filing Program institutions must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court.[2] Plaintiffs who are inmates at all other prison facilities must submit the original document for each filing to the court to the following address:

> Office of the Clerk
> United States District Court
> Eastern District of Wisconsin
> 362 United States Courthouse
> 517 E. Wisconsin Avenue
> Milwaukee, Wisconsin 53202

DO NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court includes with this order a copy of the guide entitled, "Answers to Prisoner Litigants' Common Questions" and a blank prisoner complaint form.

Dated in Milwaukee, Wisconsin, this 14th day of April, 2020.

**BY THE COURT:**

_____
**HON. PAMELA PEPPER
Chief United States District Judge**

---

[2] The Prisoner E-Filing Program is mandatory for all inmates of Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.